# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

|                          |   |                                   |
|--------------------------|---|-----------------------------------|
| RONALD FOSTER            | ) |                                   |
|           Plaintiff,     | ) | CASE No. 06-CV-0792-BLW-MHW       |
|                          | ) |                                   |
| v.                       | ) | **REPORT AND RECOMMENDATION**     |
|                          | ) |                                   |
| R. REDENIUS, et al.,     | ) |                                   |
|           Defendants.    | ) |                                   |

Currently pending before the Court for its consideration is Defendants' Motion for Summary Judgment, filed October 6, 2008. (Docket No. 50). Because the motion is fully briefed by both parties, the Court finds that oral argument is not necessary.

## REPORT

### I. BACKGROUND

**A.     Procedural Background**

On June 22, 2006, Ronald Foster ("Plaintiff") filed the instant action against officers R. Redenius, E. Noyce, G. Alvarez, E. Garcia, B. Wadman, J. Uribe, R. Schiefelbein, and D. Harrison ("Defendants"). *Complaint* (Docket No. 1). Plaintiff was an inmate and Defendants were officers at the California Correctional Institution ("CCI") at the time this action was commenced. Plaintiff alleges Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment when Defendants refused to provide him approximately 35-45 meals between October 2005 and April 2006. *Id*. at pp. 3–9. Plaintiff also claims that he was denied meals without due process, in violation of the Fifth and Fourteenth Amendments. *Id*. at p.

**Report and Recommendation Page 1**

9. As a result of missing these meals, Plaintiff alleges that he lost 16 pounds and seeks to recover compensatory damages, punitive damages, and attorney fees for the alleged constitutional violations. *Id*. at pp. 3, 9. Plaintiff later conceded that he had lost 12 pounds, not 16, as originally claimed. *Plaintiff's Opposition to the Defendants' Motion for Summary Judgment*, p. 9 (Docket No. 52) [hereinafter "Plaintiff's Opposition"]. Plaintiff's motion to proceed in forma pauperis was granted on July 24, 2006. (Docket No. 5).

Defendants filed a motion for summary judgment October 6, 2006, arguing that Plaintiff's alleged deprivation is not sufficiently serious to meet the objective requirement of an Eighth Amendment violation and that Defendants did not act with a culpable state of mind because Plaintiff refused the meals on the occasions he claims he was denied meals. *Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment*, pp. 5–6 (Docket No. 50) [hereinafter "MSJ"]. Plaintiff argues that there are sufficient factual disputes to preclude summary judgment because evidence shows Defendants were deliberately indifferent to his need for adequate nutrition and he did not refuse the meals on the occasions he was allegedly deprived of meals. *Plaintiff's Opposition*, pp. 4-7 (Docket No. 52). In reply, Defendants argue that Plaintiff has failed to show that there is a genuine dispute of material fact because he has failed to show that his health declined as a result of missing meals. *Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment*, pp. 2-5 (Docket No. 54) [hereinafter "Defendants' Reply"].

**B.     Factual Background**

Plaintiff is a 6'1" male who was housed in the California Correction Institute's Segregated Housing Unit ("SHU"), one of the most restricted units at the facility, during the period he

alleges he was deprived of several meals. He weighed 225 pounds on July 25, 2005, which is the most recent weigh-in prior to the alleged meal deprivations. Exhibit C of *Plaintiff's Opposition*, p. 19 (Docket No. 52). Plaintiff alleges that he missed meals beginning on October 14, 2005; however the "Record of Daily Activity" log for Plaintiff indicates that the first meal he missed was on November 12, 2005. Exhibit A of *Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment [hereinafter "DUF"]*, p. 6 (Docket No. 51-3). Plaintiff missed meals sporadically between November 2005 and January 2006, and it increased in frequency during February 2006. *Id*. at pp. 6-16. The last meal Plaintiff missed was on April 7, 2006. *Id*. at p. 20. In total, Plaintiff missed approximately 35-45 meals during the period from November 2005 to April 2006, and all of the meals Plaintiff missed were either breakfast or lunch. The Record of Daily Activity log shows that on nine occasions, Plaintiff missed both breakfast and lunch. *See* Exhibit A of *DUF*, (Docket No. 51-3). It is undisputed that Plaintiff received dinner on all of the dates that he missed breakfast or lunch, or both. Attachment 1 to *Plaintiff's Opposition*, p. 9 (Docket No. 53).

Upon moving to the SHU, inmates are given an Orientation Package that details various procedures, including those for mealtime. The CCI has a meal distribution policy for cells in the SHU, which protects the safety of the officers while they serve meals to the inmates through the food port in the cell doors. The policy for meal distribution requires the inmate to turn his cell light on and stand by the cell door to indicate that he will accept his meal, then the food port is opened and the meal is served. Exhibit B of *DUF*, p. 3 (Docket No. 51-4). If an inmate does not follow this protocol, officers view it as the inmate's refusal to accept a meal and the meal is not served. *Id*. Before meals are served, officers announce "lights on" over the Public Address

**Report and Recommendation Page 3**

System to alert inmates to prepare to accept their breakfast and lunch, which is served about 20 minutes apart. *Id*. at p. 4. Cold bag lunches are served first, and upon making the rounds, officers return all leftover lunches to the kitchen. *Id*. Then, a hot breakfast is served. *Id*.

Plaintiff was referred to medical staff when he refused a meal on November 12, 2005, and it was determined that there was "no objective evidence of psychosis." Exhibit C of *DUF*, p. 3 (Docket No. 51-5). On February 4, 2006, Plaintiff was again referred to medical staff to determine whether he was on a hunger strike because Plaintiff was exhibiting "very bizzare behavior" and was not getting up for breakfast or lunch. *Id*. at p. 4; Exhibit A of *DUF*, p. 13 (Docket No. 51-3). The medical notation for this visit indicates that Plaintiff spoke in full sentences, stated he was not on a hunger strike, and that he was eating dinner. *Id*. The Record of Daily Activity log also indicates that medical staff was informed of Plaintiff's refusal to follow the mealtime policy. *See* Exhibit A of *DUF*, p. 13 (Docket No. 51-3).

Though Plaintiff disputes whether Defendants attempted to accommodate Plaintiff in allowing him more time to comply with the meal distribution protocol while serving food, the records that both Plaintiff and Defendants submitted indicate several occasions upon which he was informed of the protocol. For example, Exhibit A of Plaintiff's Complaint includes several Second Level administrative appeal decisions that Plaintiff received in response to his complaints about missing meals. On December 3, 2005, in response to the October 14, 2005 incident, the Appeal Response indicates that, when inmates are first housed in the SHU, they are told that they must turn on their cell light to accept a meal. Exhibit A of *Complaint*, p. 18 ( Docket No. 1). The Response also indicates that Defendant Redenius announced his presence during meal distribution and no other inmates refused to turn on their cell lights for meals that day. *Id*.

**Report and Recommendation Page 4**

On December 19, 2005, another Appeal Response was issued to Plaintiff, and it indicates that it is customary for the officers to shout "lights on, lunch" over the Public Announcement System and again when the officer reaches the block, and that Plaintiff refused to get up to accept his meal on October 12, 2005. *Id*. at pp. 24–25. The Response also cites to and quotes the meal procedure from the Orientation Package that all inmates receive upon moving to the SHU and the Operation Procedure 111 for the SHU. *Id*. Specifically, the portion of the Appeal Response that references the meal distribution policy shows the following:

> IVB Security Housing Unit Orientation Package.
> Meal Procedures (Page 17)
> > B. Morning Meal
> > > 2. Food trays, sack lunches, and beverages will be served to you via the cell door food/cuff ports.
> > > 3. Food/Cuff ports will be unlocked individually for issuance of the food trays and beverages and immediately secured. All lights will be turned on during this time.
>
> Operation Procedure 111, Security Housing Unit & Administrative Segregation
> > Section 517.2- Units IVA and IVB ASU and SHU Meal Procedures (page 43)
>
> > 9(b) In order to ensure the safety of staff, inmates shall turn on cell lights and approach the cell door to receive the meal.

*Id*.

The Appeal Response issued on January 12, 2006, in response to the November 12, 2005 incident, indicates the officers attempted to accommodate Plaintiff so that he would not miss his morning meals. *Id*. at pp. 34–35. After calling "lights on, lunches," Defendant Wadman jiggled Plaintiff's food port and yelled to Plaintiff to wake up and turn his light on if he wanted to accept his lunch. Wadman continued to serve the next cell down the line, then returned to Plaintiff's to determine whether Plaintiff turned on his light to accept his lunch. *Id*. Because he did not turn his light on, Wadman continued serving the rest of the block. The Response again cites and

**Report and Recommendation Page 5**

quotes the mealtime protocol from the Orientation Package and Operation Procedure 111. *Id*.

The February 27, 2006 Appeal Response acknowledged the "game" Plaintiff played in not turning on his light until officers have passed his cell, then demanding food. *Id*. at pp. 41–42. It also notes that Plaintiff had been repeatedly informed of meal distribution procedures and that although the officers had previously "obliged" Plaintiff, they would no longer do so. *Id*.

On March 6, 21, and 23, 2006, Plaintiff's second level administrative appeals were screened out because the Appeals Coordinator of CCI found that the issue of Plaintiff not receiving meals was "not one of staff misconduct but rather the fact that [Plaintiff is] not fed when [he] fail[s] to follow the feeding procedure." Exhibit B of *Complaint*, pp. 51, 64, 86 (Docket No. 1).

Additionally, an entry in an Informational Chronology, signed by Defendant Schiefelbein, indicates that on February 19, 2006, he informed Plaintiff that he must turn his light on in order to accept his morning meals. Exhibit A of *DUF*, p. 23 (Docket No. 51-3).

On February 6, 2006, Plaintiff weighing 234 pounds, had actually gained weight; by March 16, 2006, he returned to his previous weight of 225 pounds. *See* Exhibit C of *Plaintiff's Opposition*, p. 19 (Docket No. 52). Plaintiff was moved to a cell on another block on February 26, 2006 and he claims he began receiving all of his meals upon this move. Despite receiving all of his meals, Plaintiff's medical record reflects that he continued to lose weight and lost an additional three pounds and weighed 222 pounds on May 11, 2006. *Id*. at p. 20. At 6'1" and 234 pounds, Plaintiff's body mass index ("BMI") was approximately 30.9%, which puts Plaintiff in the "obese" category under the National Institute of Health standards. *See* Attachment 1 of *Defendants' Reply*, p. 8 (Docket No. 54). At 222 pounds, the lowest weight recorded after the

**Report and Recommendation Page 6**

period he missed meals, Plaintiff's BMI only lowered to 29.3%, which is "overweight," bordering on "obese." *Id*. at p. 9.

## II. DISCUSSION

### A. Standard for Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record which demonstrate that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv., Inc.*, 809 F.2d at 630 (internal citation omitted).[1]

---

[1] A verified complaint based on personal knowledge of admissible evidence constitutes an opposing affidavit to a summary judgment motion. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (where the factual allegations of a verified complaint establish a prima facie case for relief under § 1983, and where the affidavits in support of summary judgment present conflicting versions of the facts which require credibility determinations, a genuine issue as to the material facts of the incident is presented, precluding summary judgment).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). The Court is required, however, to determine whether the evidence set forth is in the form specified in Rule 56(c) and (e). For example, affidavits must be made upon personal knowledge, must set forth facts which would be admissible in evidence at a trial, and must show that the affiant is competent to testify about the matters stated in the affidavit. Rule 56(e).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

In this case, it is undisputed that Plaintiff did not receive certain meals on several occasions, beginning in October 2005 with increased frequency in late January through February 2006. *See Record of Daily Activity*, pp. 6, 12-16 (Docket No. 51-3). Defendants argue that they did not give Plaintiff the meals because he did not comply with the meal distribution procedure on those occasions. *MSJ*, p. 5 (Docket No. 50-2). Defendants cite to the orientation package material and Operational Plan 111R, which requires the inmate to stand near the cell door with the cell light on before the food port was opened and the food served. Plaintiff argues that he had not received a copy of this procedure; however, exhibits submitted in support of both Plaintiff's and Defendants' filings indicate that Plaintiff was made aware of meal distribution procedures on

several occasions.[2]

B.      **Eighth Amendment Claim for Cruel and Unusual Punishment**

For an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove that (1) there was a denial of "the minimal civilized measure of necessities" which (2) was caused by the prison officers' "deliberate indifference" to the plaintiff's health or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). To determine whether there has been a denial of the minimal civilized level of life's necessities, the court conducts an objective inquiry: was the deprivation sufficiently serious? *Wilson*, 501 U.S. at 302–03. To meet this objective component, the challenged condition must be so extreme that it poses an unreasonable risk to the prisoner's health or safety. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The court conducts a subjective inquiry to determine whether the prison official acted with a sufficiently culpable state of mind; that is, with deliberate indifference to the health or safety of the prisoner. *Wilson*, 501 U.S. at 302–03. To establish an officer's deliberate indifference, a prisoner must show that (1) the officer was aware of the risk to the prisoner's health or safety, and (2) the officer deliberately disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009). To rebut the subjective inquiry, prison officials may present evidence that they reasonably responded to the risk. *Farmer*, 511 U.S. at 844–45. Mere negligence is not sufficient to establish deliberate indifference; rather, the official's conduct must have been wanton. *Id*. at 835.

1.      **Denial of Minimal Civilized Measure of Life's Necessities**

The Court first considers the objective prong of the Eighth Amendment test. Plaintiff

---

[2] *See* Section I.B. Factual Background, *supra*, for discussion.

argues that he was denied approximately 35-45 meals over a two-month period, and that when he was denied breakfast or lunch, or both, the dinner he did receive on those days was inadequate to maintain his health. *Plaintiff's Opposition to the Defendants' Motion for Summary Judgment*, pp. 4-6 (Docket No. 52). Without citing the basis for or providing evidence of his assertion, Plaintiff claims that he received less than 2000 calories per day on the days that he missed meals. *Id*. at 9. Plaintiff concludes that receiving less than 2000 calories per day and losing twelve pounds during the two-month period of meal deprivation is a sufficiently serious deprivation to rise to the level of an Eighth Amendment violation. *Id*.

Defendants argue that Plaintiff has failed to show that his health failed as a result of missing meals; thus, he received adequate nutrition to maintain his health and the deprivation was not sufficiently serious to constitute an Eighth Amendment violation. *Defendants' Reply*, pp. 3–4 (Docket No. 54). Defendants further argue that Plaintiff's exhibits show that he actually gained weight during the period of alleged meal deprivation, then returned to his original weight by the end of the period. *Id*. at 4. Defendants also argue that, even if the Court accepts Plaintiff's argument that he lost 12 pounds during the period of alleged meal deprivation, he would be considered overweight, near obese, by the National Institute of Health standards. *Id*.

The Eighth Amendment protects a prisoner's right to receive food "adequate to maintain health." *LeMaire*, 12 F.3d at 1456. In reviewing summary judgment entered in another one of Plaintiff's cases, which perhaps without coincidence involves very similar facts and allegations against officials from another prison, the Ninth Circuit held that denial of 16 meals in 23 days "is a sufficiently serious deprivation because food is one of life's basic necessities." *Foster v. Runnels*, 554 F.3d at 812–813. In that case, the court did not reach the conclusion whether the

**Report and Recommendation Page 10**

meals Plaintiff did receive were adequate to maintain his health. Other cases finding a sufficiently serious deprivation involve the plaintiff being deprived of food entirely for more than two consecutive days. *See Dearman v. Woodson*, 429 F.2d 1288, 89 (10th Cir. 1970) (no food for 50+ hours); *Cooper v. Sheriff of Lubbock Co.*, 929 F.2d 1078, 1082–83 (5th Cir. 1991) (no food for twelve days); *Reed v. McBride*, 178 F.3d 849, 53 (7th Cir. 1999) ("infirm" plaintiff did not receive food for 3-4 days at a time); *Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983) (no food for 12 days, some consecutive, out of 53- day period). In another case, the court found that depriving a plaintiff of four consecutive meals in two days is a sufficiently serious deprivation. *Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir. 1998).

The Seventh Circuit, deciding a case involving a prisoner's meal deprivation as a result of his refusal to follow a mealtime rule, found that the plaintiff's 45-pound weight loss over a period of 2.5 years was not enough to rise to the level of cruel and unusual punishment. *Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006). In that case, the court found that, aside from weight loss, the plaintiff had not experienced any "real suffering" or alleged any "lasting detrimental consequence;" thus, the meal deprivation was not a sufficiently serious deprivation to bring an Eighth Amendment claim. *Id*. at 547. The Fifth Circuit expressed doubt that the plaintiff's alleged fifteen-pound weight loss as a result of missing fifty meals in five months was enough to establish that he was deprived of "anything close to a minimal measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998). Thus, although missing several meals in a short period of time may be a sufficiently serious deprivation, the deprivation does not rise to the level of an Eighth Amendment violation unless the meals the plaintiff receives are not enough to maintain his health.

In this case, even if the Court accepts as true Plaintiff's claim that he missed approximately 35-45 meals in the six-month period and that he lost 12 pounds as a result, the food he did receive during the period was adequate to maintain his health. Contrary to Plaintiff's argument, there is no case law mandating that inmates receive at least 2000 calories per day; instead, *LeMaire* instructs that inmates are entitled to receive enough food to maintain health. Unlike the plaintiffs in the cases where the court found a sufficiently serious deprivation, the Plaintiff here was not deprived of all food for several consecutive days. It is undisputed that Plaintiff received dinner on each day that he allegedly missed breakfast or lunch, or both. Similar to *Freeman*, Plaintiff has not established that he has endured any significant suffering or long-lasting detriment to his health. In fact, Plaintiff's medical record shows that during the alleged period of meal deprivation, from October until early April, he gained nine pounds by February before returning to his starting weight by mid-March, and that he continued to lose weight, weighing 222 pounds on May 11, 2006, after he was moved to another housing unit and was receiving three meals daily. Exhibit C of *Plaintiff's Opposition*, p. 19–20 (Docket No. 52). At 222 pounds, Plaintiff's BMI of 29.3 indicates that he was categorically "overweight" according to the National Institute of Health standards. *See* Attachment 1 to *Defendant's Reply*, p. 9 (Docket No. 54). Nothing in the record or in Plaintiff's filings suggests that the food he received during the alleged period of meal deprivation was insufficient to maintain his health. Plaintiff has failed to establish that the alleged meal deprivation was sufficiently serious, such that he did not receive enough food to maintain his health. Plaintiff's claim fails because he has not established the objective prong of the Eighth Amendment test. Nevertheless, the Court next considers the subjective prong of the test.

**Report and Recommendation Page 12**

## 2. Deliberate Indifference to Plaintiff's Health or Safety

Plaintiff argues that Defendants were deliberately indifferent to his health and safety when they refused to provide him with the breakfasts and lunches on the dates at issue. *Plaintiff's Opposition*, p. 5 (Docket No. 52). Plaintiff argues that Defendants acted with a culpable state of mind because they ignored his requests for meals and did not make an attempt to provide him with his meals on the dates of the alleged deprivation. *Id*.

Defendants argue that Plaintiff refused the meals on the dates that he did not receive breakfast and lunch because he failed to follow meal distribution protocol requiring inmates to stand at the cell door and turn on their cell light. *MSJ*, p. 5-6 (Docket No. 50-2). Defendants argue that prison officials view an inmate's failure to follow the protocol as an indication by the inmate that he will not accept a meal at that time. *Id*. Defendants also argue that they did not act with deliberate indifference to Plaintiff's health and safety because they frequently informed Plaintiff of the meal distribution procedures and attempted to accommodate Plaintiff to give him time to wake up and follow the protocol to receive his meals. *Id*. at 6. Furthermore, they referred him to medical staff on the first documented occasion he missed a meal, as well as during the month he missed meals with more frequency, to determine whether he was mentally capable of refusing meals and whether he was on a hunger strike. *Id*.

Receipt of food may be contingent upon the prisoner following a prison policy that is reasonably related to mealtime safety, regardless of whether that policy is in written form. *Foster v. Runnels*, 554 F.3d at 813–14 (recognizing the difference between using food deprivation as a punishment versus establishing a reasonable condition to the receipt of food); *Talib v. Gilley*, 138 F.3d at 215 ("the validity of prison policies is not dependent on whether they are written or

verbal."). Of course, a prison cannot allow a prisoner to effectively starve himself to death when he deliberately fails to follow the mealtime protocol; nonetheless, a "prison cannot be forced by such tactics to change an otherwise reasonable rule." *Freeman*, 441 F.3d 546.

In Plaintiff's earlier case, *Foster v. Runnels*, he was denied meals because he failed to follow a prison policy prohibiting inmates from covering the back window of their cell. *Id*. at 813–14. The court, in reversing summary judgment in Defendant's favor, found that Defendant failed to establish how the rule requiring the back cell window to be uncovered is a reasonable condition on the receipt of food. *Id*. at 814. There, the court found that there were no facts that suggested it was pertinent that prisoners uncover their back window before serving the inmate his meal through the front cell door. *Id*.

In another case, the plaintiff was denied his meals when he refused to remove a sock from his head and when he refused to wear pants during meal distribution, which violated the prison's mealtime rules. *Freeman v. Berge*, 441 F.3d at 544. The court found that the rules requiring the removal of the sock and wearing pants was a reasonable condition to the receipt of food because the sock could have been used as a weapon and requiring pants protected the privacy of female officers. *Id*. The court found that the plaintiff's meal deprivation was "self-inflicted," the defendants did not act with deliberate indifference to his health or safety and the meal deprivation was not sufficiently serious to constitute an Eighth Amendment violation. *Id*. at 547.

Similarly, the plaintiff in *Talib* also essentially deprived himself of his meals because he refused to follow a prison rule requiring inmates to face the wall and kneel with their hands over their heads before being served meals. *Talib v. Gilley*, 138 F.3d at 214. In that case, the court found that the record contained many grievances filed by the plaintiff, complaining that he was

**Report and Recommendation Page 14**

being deprived of meals. *Id*. at 215. The prison officials' responses to those grievances contained written confirmations of the prison mealtime policy, such that plaintiff was on notice of the policy. *Id*. Because the policy was in place and known to the plaintiff, the plaintiff deprived himself of his meals when he failed to follow the meal distribution rule. *Id*. So long as meal deprivation is not a punishment for failure to follow the rules and the rule is instead a reasonable condition to the receipt of food, an officer's decision not to provide the inmate with a meal does not constitute an Eighth Amendment violation.

In this case, the mealtime protocol is a reasonable condition to the receipt of food, and Plaintiff's failure to satisfy the condition was reasonably viewed by Defendants as Plaintiff's rejection of food. The policy in place in this case requires the prisoner to turn his cell light on and stand by the door to indicate that he would accept the meal during mealtime. Exhibit B of *DUF*, pp. 1–2 (Docket No. 51-4). When an inmate does not follow this protocol, the officers understand the failure to follow the policy as the inmate having effectively refused the meal. *Id*. at p. 2. The purpose of this policy is to protect officers during meal distribution in the SHU, one of the more restricted housing areas on the prison premises. *Id*. Meal distribution is a duty which renders officers particularly vulnerable because it requires the officer to open the food port in the door, exposing them to the possibility that the inmate will fire projectiles (including weapons and bodily fluids) or grab the officers through the open window. *Id*. Inmates, including Plaintiff here, are informed of this policy, as is evident by the Appeal Responses to Plaintiff's grievances, the orientation package distributed to inmates, and Plaintiff's Record of Daily Activity. When an inmate does not follow the protocol and an officer does not provide an inmate a meal, the officer is not punishing the inmate for failing to follow a rule; rather, the

**Report and Recommendation Page 15**

officer is reasonably concluding that the inmate does not want his meal. The policy that Plaintiff failed to follow on the occasions he was not served a meal was a reasonable condition upon the receipt of food; following the protocol was an indication by the inmate that he would accept his meal. Plaintiff effectively deprived himself of his meals by failing to follow the protocol on the occasions he missed meals.

Plaintiff has failed to establish facts showing that the officers acted with deliberate indifference to his health or safety. Plaintiff did not receive his meals because he effectively refused the meals when he failed to stand by his cell door and turn his cell light on. There is ample evidence showing that Plaintiff was informed of the meal distribution policy. Similar to *Talib*, Plaintiff in this case filed many grievances for missing meals. The prison officials' responses to Plaintiff's grievances repeatedly cited to and excerpted the meal distribution policy, which establishes that Plaintiff was on notice of such policy. The above-discussed recitation of facts highlights the occasions upon which prison officials, including Defendants, informed Plaintiff of the meal distribution policy. Further, as discussed above, the evidence also shows that the officers adjusted their procedures to accommodate Plaintiff so that he was given an opportunity to wake up, stand at the door, and turn his cell light on to accept his morning meals. Even more, in the month of February, when Plaintiff repeatedly refused meals, officers referred him to the medical staff for a psychological evaluation to ensure that Plaintiff was mentally capable of refusing meals and was not on a hunger strike. *See* Exhibit C of *DUF*, p. 4 (Docket No. 51-5); Exhibit A of *DUF*, p. 13 (Docket No. 51-3). Given the Plaintiff's refusal to conduct himself in the manner that indicated he would accept his meals, the officers' continually informing him of the protocol, the officers' attempt to accommodate Plaintiff, as well as their

**Report and Recommendation Page 16**

referring him to medical staff, the Court concludes that the officers did not act with deliberate indifference to Plaintiff's health or safety. Accordingly, summary judgment in favor of Defendants should be granted.

C.     **Fifth and Fourteenth Amendment Claims for Due Process Violations**

The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1 (1964). Procedural due process is not implicated by the facts of this case, and thus the Court construes the claim as a substantive due process claim. The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the *Graham* principle, Plaintiff's claim is more appropriately construed as an Eighth Amendment claim than a Fourteenth Amendment substantive due process claim. Accordingly, Plaintiff's Fifth and Fourteenth Amendment claims should be dismissed.

### III. CONCLUSION

Plaintiff has failed to meet either the objective or subjective prongs of the test for Eighth Amendment cruel and unusual punishment claims, as set forth in *Wilson v. Seiter* and *Farmer v. Brennan*. As a result, Defendants are entitled to summary judgment, and Plaintiff's Complaint should be dismissed with prejudice.[3]

---

[3] The Court also notes that Plaintiff admittedly has a record of filing claims for Eighth Amendment violations against prison officials in the Eastern District of California, and a pattern of facts involving Plaintiff's refusal to follow prison safety procedures resulting in alleged food deprivation is evident among his cases. *See Foster v. Runnels*, 2:03-cv-01113-JAM-JFM (Ninth Circuit remanded to district court because qualified immunity did not apply to defendant); *Foster v. Meraz*, 2:05-cv-00148-GEB-JFM (dismissed on summary judgment because

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **HEREBY RECOMMENDS that:**

1) Defendants' Motion for Summary Judgment (Docket No. 50) be GRANTED;

2) Judgment be entered in favor of Defendants and the case be dismissed with prejudice.

Written objections to this Report and Recommendation must be filed within thirty (30) days pursuant to 28 U.S.C. § 636(b)(1). The document should be captioned "Objections to Magistrate Judge's Report and Recommendation." The parties are advised that as result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: May 4, 2009

Honorable Mikel H. Williams
United States Magistrate Judge

---

no evidence that Plaintiff's diet was inadequate to maintain his health)*; and Foster v. Runnels*, 2:01-cv-2156-MCE-GGH-P (dismissed for failure to exhaust administrative remedies).